Um, now we're going to switch venues for our video input. Um, I think we're gonna stay on the bench while that happens, if it's only like a minute or two. Thank you. Good morning, Your Honors. Good morning. The video will now be coming from Buffalo, but let's wait until we actually have counsel there. Building. There you go. Good job. Wow. Good morning. There's the camera. Oh. Can you hear me, counsel in Buffalo? Yeah. Sure. Wonderful. And we can hear you. So that's, that's fine. We're going to turn first to the Good morning, Your Honors. May it please the court. My name is Jillian Harrington and I represent Jose Martinez. I was assigned by this court to represent Mr. Martinez on direct appeal. I did not represent him in the district court below. As Your Honors are, of course, aware, we raised five issues in Mr. Martinez's appellant's brief. Uh, we started with the sufficiency of the evidence of the conspiracy, the narcotics conspiracy. Basically there, there were at trial, there were two sets of charges here. We had the drug conspiracy and we had the murder charges. There were several charges related to the murder. Um, and Mr. Martinez was acquitted of those murder charges and convicted of a single conspiracy count of, yes, of the single conspiracy count. And the other defendants were also charged with the murder and they were acquitted as well, weren't they? I'm sorry? Weren't the other defendants in this trial charged with the murder as well and they were also acquitted? Yes. So no one was convicted of the murder? Um, that is my recollection. Uh, I'm pretty sure that there were others who had pleaded guilty, um, and were cooperators. Um, but at this trial, um, yes. And so Mr. Martinez before you is only convicted of the conspiracy, although he was sentenced based on the acquitted conduct. And I'd like to address that briefly a little bit later. Um, we'll start with the sufficiency of the evidence. Um, Mr. Martinez had presented, um, we don't call it a defense, but it, it, the buyer seller, he had asked for an instruction on the buyer seller relationship. And that instruction was, uh, the request for that instruction was denied by the district court. Um, what the was selling drugs to Quincy Turner, who ultimately was the victim for which the murder charges arose. He was selling to Mr. Turner. There's no evidence whatsoever that he was in any contact with the members of what they call the Quentin Leaper organization. Leaper was the head of this narcotics group. Um, they were selling on Leaper's block. Isn't the buyer seller a charge used in those circumstances where, um, the buyer is buying for personal use? Isn't that typically what we envision giving that charge? That is typically where it has been used. But I think this case would be the perfect example of a case where even though these were larger quantities, that this case demonstrates all the reasons that the buyer seller, um, instruction was formed. We have Mr. Martinez who was selling directly to one person. Um, there's no evidence that any member of the Leaper organization even knew him. They used, in fact, Mr. Turner, it was, there was testimony, Mr. Turner used aliases, even when referring to Mr. Martinez, called him reek. There was also fronting of the drugs and our case law does recognize that fronting suggests a joint interest in the downstream sales. And in those circumstances, I'm not sure how you can say that this qualifies as the mere buyer and seller relationship, a limited circumstance that as Judge Pooler points out, has informed our, our precedent. What do you, how do you deal with the fact that there's evidence of fronting here? I mean, you've got quantity, you've got repetition, you've got fronting, all circumstances that we have said typically take it out of the buyer seller. And large quantities. Yeah. Right. Again, under this factual scenario, and those are, factors of course, that this court has recognized in this specific factual scenario, there was some fronting. There was testimony at least that there was fronting or consignment as some people like to call it. I argued in my brief that that just demonstrated the relationship that had formed between Turner and, and Mr. Martinez that had nothing to do with that. Certainly the quantities and the fronting suggests it's not use. And once you front, you have an interest in downstream sales taking place because otherwise you're not going to get paid. And at that point, you've got more than everything's done when you sell, you have the ongoing continuing interest that, that allows a conspiracy to be found. But the fact that these two, that there was just the connection between these two, Mr. Martinez didn't care. That's debated. I know by the government that he's part of the larger scheme, but I'm focusing on even what you say, I don't see how you can say that this could support a mere buyer seller relationship. Well, the relationship is between Mr. Martinez and Mr. Turner. Mr. Martinez has nothing. There was no evidence that in fact, when Mr. Turner was doing his proffer sessions with the trial, that he thought that Turner may have been lying because Mr. Martinez's name never came up. He never appeared on the cameras. He never appeared, his voice was never heard on the wiretaps. He's not mentioned in the wiretap affidavits. He was never a part of this case. There was an established relationship based on the evidence here between Turner and Martinez. And that's all. I guess I'm just, I'm having difficulty given the quantity, the six months of sales, the evidence of fronting. It seems if we were to accept your argument, it would be almost standard in any narcotics distribution case to give the instruction. So can you help me out understanding what would distinguish this case from another large scale conspiracy that was similar features? I think that the factual scenario here, and I think it's important that these cases are taken on a fact basis, case by case basis. The fact that Mr. Martinez was so segregated had nothing to do with the LEPRA organization. And that brings us to the point where this court has said that if a defendant requests an instruction, no matter how tenuous the defense may be, he should get that instruction. But there has to be some foundation in the facts. And I guess I'm having difficulty seeing why this, why your construction of when the instruction is appropriate, wouldn't it be true of almost every narcotics case? I don't know that it would be in every. It may be, maybe in more cases than it is given. You know, if we go back to our elementary school concentric circles, you know, we have the LEPRA organization and we have Mr. Martinez. Mr. Martinez's path never crosses with that LEPRA organization. You know, you keep emphasizing that, but the district court specifically rejected that this was, that the charged conspiracy was the LEPRA organization. He said it was the Martinez organization. Well, isn't that, isn't that the district court's view of it? There is no evidence to point to that. The district court thought there was plenty of evidence of it. But we'll hear from the government on that, but go ahead. I just wanted to point out, we are not immediately assuming that this is the conspiracy because that need not be what the jury found. I don't think it was the government's theory and the district court didn't think it was. Well, we, and that was an argument that we made also in this point was that we don't know which conspiracy. In fact, the government never locked itself into one. There was no bill of particulars ordered. It was, it was denied on several occasions. And then when the government charged, there was nothing specific as to what this conspiracy actually was. Was it some conspiracy? What the scope of it was. Yes. And who the players were. And so again, we are left with. Was there any evidence that Mr. Martinez dealt with anyone except Mr. Turner? No. Of the other defendants of the four-year investigation, wiretaps, photos, no, no, no information before the jury that Mr. Martinez dealt with anyone but Mr. Turner. Not that I'm aware of. In fact, several of the cooperators said that when Mr. Martinez walked into court on the superseding indictment, because he was not included in the initial indictment, they didn't even know who he was. And there was also testimony that when Mr. Turner communicated with members of the LEPA organization, he used aliases for what the government claims to have been Mr. Martinez. And didn't Mr. Martinez join at some point after the original source was somehow arrested or stopped? The original source from California? Yeah. There was a source in California and there were issues with the product. And then there was an issue with mailing. They had mailed in a Federal Express package containing a large sum of cash and the Federal Express package arrived without the cash in it. And I think that's when, and then there were product supply issues as well. I think around the same time, Turner had then turned to another man who happened to be Mr. Martinez's brother. And then Mr. Martinez stepped in and became, according to the government. It's conceivable that he wasn't a member of this conspiracy for the four years of the toward the end of its life of this conspiracy. Well, the argument was that for about six months, I believe that he was supplying. And that would explain why no one recognized him or knew him. Well, it was ongoing. It was ongoing, the surveillance. There were cameras outside of LEPA's home. There was the wiretap surveillance. They did 24 controlled buys. And counsel below asked the government to name, to describe the conspiracy and asked for a bill of particulars and never got that information from the government. Isn't that correct? Absolutely. And this was a very lengthy trial. It was a nine week trial, almost a 6,000 page record, a very large number of witnesses, cooperating witnesses, all the government's case, the defense didn't put on. Continue. I'll give you a little more time because we've asked some questions. You have more issues. Oh, okay. Thank you. We're going to address the district court's decision to take account of the murder and sentencing. Yeah, just briefly. As an attorney, I've been practicing for over 20 years. I know it's the law of the land. I know that the Supreme Court held that. I know that this court has held that. It doesn't seem fair though, does it, to an average person? When you talk about one of the prongs of Olano, of how the court is perceived in the public, when he's acquitted of this to sentence him for it, it doesn't seem fair. It's actually unbelievable to me, to be honest with you. Our criminal justice system is based on the jury. It may not be a perfect system, but whenever people say that to us as officers of the court, we say, find me a better system. But you concede that it's established by Supreme Court precedent. Absolutely. And I concede that. And that he was not sentenced beyond the guideline, beyond the statutory range for the drug crime of conviction, right? When he got life in prison, yes. And that was at the top end of the statute, but the judge made it clear. And that the standard for deciding whether he was involved in the murder was preponderance at sentencing beyond a reasonable doubt at trial, right?  No, it's not a second bite, because it doesn't have to be proved to the same degree, and it's not going to result in any independent sentence. I mean, we have a statute that says the district court must consider all facts relevant to the defendant, his character, the commission of the crime, except ones that are invidious. And that's why the Supreme Court has said it can be considered. What's your reason for thinking it can't be? Because, well, I'll give you an example. Last night I was having dinner with my daughter, who's 13. She's taking American history. And she asked me, what kind of case are you arguing tomorrow, Mom? So I tell her the story. And she says to me, she asked a very interesting question that I'm embarrassed to say I had never thought of. She said, well, what if the murder was the only charge that was presented to the jury? Could the judge then have set that aside and said, I think that you're guilty of that, so I'm going to sentence you on that anyway? Now, I said, no, of course he can't. Let me tell you what we have here. Your client is being sentenced for a narcotics conspiracy, in the course of which the judge found by a preponderance that he had attempted to kill, or he did arrange the killing of a cooperating witness. And that's the basis for the drug crime. That's a more serious drug conspiracy than if no violence had ever informed it. But the jury, hearing all the evidence, who had heard all of the evidence, acquitted him. But they weren't asked whether they thought it was established by a preponderance. Well, that's the argument. The argument is whether or not a judge should be allowed to differ on this question. Is that whether or not the judge should even be given that opportunity to use the preponderance of the evidence standard. As I started, as I said a moment ago, it doesn't seem fair to the average person. Not to your daughter, and maybe not even to judges. Thank you very much, Your Honors, for giving me the extra time. I appreciate it. Thank you. We'll hear from the government. Good morning, counsel. Good morning. Thank you, Your Honor, again for the courtesy. May it please the court, Monica Richards, the United States, on this appeal. With regard to the sufficiency of the evidence, it's clear that here a defendant may be guilty of a conspiracy, even if he knows only one other member of that conspiracy. Whether or not the buyer-seller instruction should have been given is a question which I don't think requires much attention at all, particularly in light of the fact that here there was given a multiple conspiracy charge. What multiple conspiracies were you referring to? Well, it was sort of ... Throughout this case, what was litigated was indeed the question of whether or not this conspiracy consisted of one or more conspiracies, and that was something that was litigated all along. And what is the government's position now? Was it one or more conspiracy? This was one conspiracy. One conspiracy from the beginning, from the LEPR organization? Mr. Martinez was always part of the LEPR organization? Is that your view now? He joined in an ongoing conspiracy, Your Honor, respectfully. So at some point he joined the LEPR conspiracy? That's what the facts here established, in fact. Once the original source dried up from California, instead Mr. Martinez, and he then became the source for this continuing conspiracy. Whether he knew about the other members of the conspiracy is irrelevant, as we know, but once he joined, he was in it for the duration. Yes, and that's demonstrated by the amounts that were provided. That's demonstrated, as Your Honor has already noted, with regard to the fronting in some instances. Why did the government resist giving a bill of particulars in this case? I heard the court's discussion on that, Your Honor. I'm sorry that I'm not prepared to answer that. I believe that, again, that was something that was litigated throughout, and the district court must have . . . I don't want to say much. I'm sorry. Were you trial counsel below? No, ma'am. No, I was not. Okay. Sorry. I thought the district court rejected the idea that your client was part of the Lieber conspiracy. Did I misunderstand the district court? Rejected the idea that he was part of the Lieber conspiracy? Right, and thought that it was a Martinez-headed conspiracy. I'm looking for where I thought the district judge made that distinction, but I thought that was the case. Did I misunderstand? No, I think that the characterization is tricky only because of the continuing nature of the sales that were continuing. If we looked at Lieber down in this organization, that was something that went on for definitely a longer duration than the moment when Martinez stepped in, but that was the six months, and that was the top-down nature of it. It's the way the investigations work. It's typical that the law enforcement first determines who the on-the-street sellers are and then work their way up the organization. That's not atypical, I'm sure, in this court's experience, and so that here . . . Mr. Martinez is playing a role adjustment, right? He was. He was found at four levels. Yeah. So you would have to show that he was head of a conspiracy or managing a conspiracy that involved four or more people. Is that what one he got the enhancement under? I believe it was. I checked the PSR, but yes. But the timing of it, I mean, I'm not disagreeing with the court's indication that this was a Martinez conspiracy, but it was from a certain time forward, the six months in which he was the source. So that with regard to the buyer-seller bit, then that's where this case . . . that's where the district court certainly committed no error in declining . . . it gave the multiple conspiracies charge, but declined to give the buyer-seller exception charge, and that's certainly appropriate here, where we're not talking about somebody who's an addicted drug dealer buying for personal use. We're talking about a relationship where this defendant, Martinez, was supplying large quantities over a duration that he knew were going to be sold based on the nature of the fronting, so that this buyer-seller exception just certainly . . . it had no place in this case. Counsel, you did say you did not try the case below? I did not, Your Honor. Because opposing counsel also made some complaints about failure to turn over documents at the appropriate time during the course. Oh, certainly. With regard to that matter, yes, Your Honor, I'm familiar with it, and the district court addressed it during the trial as things came up. Called it poor preparation? That's what the district court said, poor preparation? The district court had its characterization of the way in which it was turned over, yes, and then conducted as it needed to do, gave instructions and provided additional time, directed the defense . . . excuse me, directed the prosecutors to do an examination to look and make sure there was nothing else that was missing, and that happened, so that those things were addressed as they appeared in the course of the proceeding, and they were handled, and there was no finding of any intentional misconduct here. Counsel, why did this defendant serve 98 months in jail before he was convicted? Why was he in jail for 98 months? Based on the manner in which the case was conducted? I'm sorry, if I missed . . . He was served 98 months, I believe, before he was sentenced. That's what counsel said at the sentencing colloquy, 98 months, which I work out to be a little more than eight years, and I was wondering why it took that long to bring this case to trial. Again, Your Honor, I have only the docket sheet before me and the extensive back-and-forth that occurred during this case, the extensive ongoing litigation that occurred. We had intervening defendants that were pled guilty, co-defendants that pled guilty. There were a number of circumstances present here, and I'm sorry if I didn't note any concern in the trial brief. Well, it wasn't in the blue brief, but it stands out in the sentencing colloquy, 98 months he was incarcerated before he was sentenced, and I was wondering if the government knew why. The Western District has some issues with speedy trials. I was just wondering if counsel had an idea why. I appreciate the court's question and concern, but I'm not prepared to answer that. If that's something that should be addressed in a post-argument brief, I would certainly do that, of course, but I'm not prepared. I'm sorry to answer that as succinctly as the court would like right now. Thank you. Again, with regard to the sentencing then, with regard to that sentence that was imposed here otherwise, the district court's consideration of the acquitted conduct is something that has been admitted as something that the court can and should consider. Here, I would only note also the elements of offense are tried by a jury, but facts relevant to sentencing may be found by a jury. Here, he had not only the trial evidence. This district court judge presided over the trial and heard the testimony, but he also had the plea agreement as noted in the sentencing proceeding as relevant. He had the plea agreement of the co-defendant, Juan De Jesus Santiago, and that's cited by the district court in its sentencing decision. That's in the record here at pages 69 through 71, where the judge outlines the additional facts that it considered to be factors with regard to the establishment of the preponderance of the evidence finding here. He doesn't say preponderance of the evidence. He just says, I find that you are directly responsible for the death of Quincy Turner. He doesn't qualify what standard he's applying, does he? Page 71, I do see. I'm sorry. He just doesn't say what standard he's applying when he sentences him. Based on the totality of the trial evidence outlined above and the relevant guilty admissions, the court finds by a preponderance of the evidence that Martinez paid for and arranged for. Where are you reading from? Because I'm reading the sentencing colloquy. What are you reading from? I'm at page A71 of the record, where the district court has filed its decision and order as to the . . . I see. He doesn't do that in the presence of the defendant though, right? In the presence of the defendant, he merely says, I find that you are directly responsible for the death of Quincy Turner. What he says in the written is not in the . . . Again, I'm not prepared to answer that succinct question, but I trust your Honor's review of the record with regard to that. I just know that I've read the standard having been determined and applied with regard to the PSR, A71. I know he adopts the PSR. Thank you. Thank you. Yes, that's accurate. And preponderance is the standard for factual findings at the sentencing, isn't that correct? That is the standard for sentencing findings? Yes, your Honor. Yes, your Honor. If there's no further questions, I'd rest on the brief then for the remainder. Thank you. Thank you. Thank you, counsel. Thank you both.